ORIGINAL

LEONARDO M. RAPADAS
United States Attorney
ERIC S. O'MALLEY
Assistant United States Attorney
DISTRICT OF THE NORTHERN
 MARIANA ISLANDS
Horiguchi Building, Third Floor
P.O. Box 500377
Saipan, MP 96950
Telephone: (670) 236-2980
Fax:        (670) 236-2985

Attorneys for United States of America

FILED
Clerk
District Court

MAR -3 2008

For The Northern Mariana Islands
By_____
         (Deputy Clerk)

UNITED STATES DISTRICT COURT
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>AMIN, MOHAMAD RUHUL,<br><br>    Defendant. | Criminal Case No. 08-00002<br><br>MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PROPOSED JURY INSTRUCTIONS 20 & 21.<br><br>Hearing: March 7, 2008<br>Time:    9:00 a.m.<br>Judge:   Hon. Alex R. Munson |

COMES NOW, the United States of America, by and through its undersigned attorneys, to hereby submit the following Motion and Memorandum of Law in support of its use of Proposed Jury Instructions 20 and 21, regarding marriage fraud and the definition of certain terms relevant to this case.

BACKGROUND

On January 22, 2008, a Grand Jury returned a three-count superseding indictment against Mohamad Ruhul Amin, the defendant, charging him with conspiracy, providing false information in an application for a U.S. passport, and subornation of perjury. The case is set for a jury trial to begin on March 10, 2008 at 9 a.m. On February 27, 2008, counsel for both parties met with the Court in chambers for a pre-trial conference. During that conference, the government noted that this case will present certain issues of first impression and legal questions that are unique because of the

Commonwealth's relationship to the United States. In order to avoid confusion and unnecessary delay, the parties agreed that these issues should be fully-briefed and resolved prior to trial. Accordingly, the Court ordered that the parties submit any filings by March 3, 2008. On February 29, 2008, the government provided the defendant with proposed jury instructions, two of which (Jury Instructions 20 and 21) addressed the problems at issue. Pursuant to the Court's order, the government now submits this Motion and Memorandum of Law in support of those jury instructions.

## ISSUES PRESENTED

**I.   Proposed Jury Instruction for Determination of a Valid Marriage.**

The government alleges that the defendant made, and conspired to make, false or fraudulent statements in an application for a U.S. passport. Specifically, he and his putative wife Rose Mayo Omar Reyes (hereinafter "Reyes") submitted a Form DS-11, Application for a United States Passport, to the U.S. Passport Office located in Susupe, Saipan, both knowing that the application contained false or fraudulent statements. Because the defendant asked Reyes to submit the application and to swear to its truthfulness under oath, he is also charged with suborning perjury. The statements in question were that the defendant and Reyes were married, and that Reyes' family name was "Amin" (the putative wife having adopted the defendant's family name). As alleged, the statements are fraudulent because the marriage is fraudulent. At trial, the government intends to introduce evidence that the defendant entered into the marriage for the purpose, and only for the purpose, of obtaining immigration benefits.

Title 8, United States Code, Section 1325(c) imposes a criminal penalty for entering into such marriages. However, it is, at best, unclear whether this provision of the Immigration and Nationality Act applies in this jurisdiction because of Section 503(a) of the Covenant Establishing the Commonwealth of the Northern Mariana Islands.[1] As such, the defendant was not charged under

---

[1] Section 503(a) establishes that the "immigration and naturalization laws of the United States" do not apply in the Commonwealth of the Northern Mariana Islands. Although Section 506 provides certain exceptions (in other words, federal immigration laws that do apply), the statute addressing

this statute.[2] Nonetheless, the government alleges that because the marriage was fraudulent under any applicable standard, and the defendant and his putative wife knew that it was a fraud when they stated they were married on a federal immigration form, they have violated federal law.

It seems necessary that before the jury can reach a determination of guilt or innocence on the charges filed, either the Court or the jury must determine as a predicate fact that the marriage was fraudulent. Assuming it is the jury, the government proposes the following jury instruction:

Jury Instruction 20: Fraudulent Marriage

In order to determine guilt or innocence in any of the three charges alleged in the Indictment, you must first decide whether the marriage between the defendant and Rose Mayo Omar Reyes was valid or fraudulent. The following will be helpful to you in reaching this determination:

*Definition*: A valid marriage is where, on the day of the wedding, the bride and groom intended to enter a life that conforms with the common understanding of the duties and obligations of marriage.

*Effect*: Should you determine that the marriage was not valid, then the law says it is as if the marriage never took place. In other words, a marriage determined by you to be fraudulent is a marriage that never existed for any legal purpose.

The "definition" above is a modified jury instruction approved by the Ninth Circuit in a marriage fraud case charged under Title 8, United States Code, Section 1325(c). See United States v. Ding, 187 F.3d 649 (9th Cir. 1999). The "effect" instruction above is based on long-standing federal law establishing that marriages entered into for the purpose of obtaining immigration benefits are not, in fact, marriages at all. See e.g., United States v. Rubenstein, 151 F.2d 915, 918 (2nd Cir. 1945). The United States Supreme Court has affirmed that such marriages are void *ab initio,* and all the rights and privileges that would otherwise attach to a marriage are also void *ab initio*, including

---

fraudulent marriages does not appear to fall under any of those exceptions. The government does not concede that the federal marriage fraud statute is inapplicable in the Commonwealth, but does not find it necessary to address that question here.

[2] Under C.N.M.I. law, it is also a crime to knowingly enter a marriage "for the sole purpose of obtaining a labor or immigration benefit, or for the purpose of evading any provision of [relevant C.N.M.I. immigration laws] or any United States immigration law..." 3 CMC § 4366(a).

the right to immigration benefits and testimonial privileges. United States v. Lutwak, 344 U.S. 604, 614-615 (1953).

The Ninth Circuit case of Johl v. United States, 370 F.2d 174 (9th Cir. 1966) is particularly instructive to the issue at hand. In Johl, the defendant argued that because he and his putative wife had undergone a ceremony, they were legally married, and nothing more was required. According to the defendant, he had made no material misstatement and could not be subject to prosecution under Section 1542, when he included his marital information on an application to change his immigration status. The appellate court rejected this argument. Applying the principles of Lutwak, the court held:

> The immigration law, in granting advantages to those who have married American citizens, is not talking about ceremony or legality-the taking of those steps which enable a couple lawfully to live together in a marital relationship. It is talking about the marital relationship itself-an actual joining together as husband and wife.

Id. at 177.

Significantly, the Johl court did not view the marriage ceremony as an event that nullified the criminal intent. On the contrary, the court considered the ceremony to be another step in furtherance of a conspiracy whose ultimate purpose was to defraud the government. Moreover, the Johl court found that his failure to disclose on the application that he had participated in the marriage ceremony for the sole purpose of obtaining an immigration benefit, he had withheld a material fact, the functional equivalent of making an affirmative misrepresentation and therefore a violation of Section 1542. Id. at 177-78.

The government's theory in this case is based on principles identical to those established in Lutwak and Johl, namely, that a ceremony, even if cloaked with all the legalities of marriage, does not constitute a marriage if the parties never intended to live together as husband and wife. Moreover, legally speaking, one who avows that such a couple is "married" thereby makes a misrepresentation. The above jury instruction explains this legal principle to the jurors.

## II. Proposed Jury Instruction for Definition of Fraudulent Statement.

The defendant will likely argue that, validity of the marriage notwithstanding, there was no knowing and intentional misstatement. That is because the defendant and Reyes *believed* they had a legal marriage, having received something of a 'stamp of approval' in the form of their C.N.M.I. marriage certificate. The government respectfully submits that such an argument misstates the law. Indeed, if this argument is not barred outright by the Court, then the following jury instruction should be provided:

<u>Jury Instruction 21</u>:   <u>Additional Definitions</u>

The following definitions will be helpful to you:

*"False Statement"*: A false statement means that the defendant made the statement with a fraudulent purpose in mind. In other words, a statement, while technically true, might still be false if the goal of making that statement was to accomplish a fraud.

*"Knowingly"*: An act is done knowingly if the defendant is aware of the fact and does not act through ignorance, mistake, or accident. The government is not required to prove that the defendant knew that his acts or omissions were unlawful. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

As it is with an analysis of a fraudulent marriage, triers of fact must look to the defendant's state of mind and the underlying purpose of a statement as they assess whether a statement was false or fraudulent. For example, in a Florida case, a defendant applied for a U.S. passport under a deceased classmate's name, hoping to use the name on that passport to dupe foreign investors in a fraud scheme. The court noted that, at least in that jurisdiction at that time, it was perfectly legal to adopt any name without resort to a legal proceeding and to apply for a passport under that name. Nonetheless, the trial court found a criminal violation of 18 U.S.C. §1542, because "[t]he deception of an investor is clearly a fraudulent purpose...." <u>United States</u> v. <u>Wasman</u>, 484 F.Supp. 54, 57 (S.D. Fla. 1979) <u>distinguishing from</u> <u>United States</u> v. <u>Cox</u>, 593 F.2d 46, 48 (6th Cir. 1979)(legal to apply for a new passport under a legally adopted name *unless* the name was adopted for a fraudulent purpose). This principle

is directly applicable in the instant case. The above-described jury instruction is required to inform the jurors of this legal principle.

## CONCLUSION

For the reasons stated herein, the government respectfully requests inclusion of the above-described jury instructions, and permission to present its case based on these principles at trial.

Respectfully submitted this 3rd day of March 2008.

LEONARDO M. RAPADAS
United States Attorney
District of the Northern Mariana Islands

By: _____
ERIC S. O'MALLEY
Assistant U.S. Attorney

-6-