Colin M. Thompson, Esq.
Thompson Law Office, LLC
J.E. Tenorio Building
PMB 917, Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile: (670) 233-0776

*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AMIN, MOHAMAD RUHUL.<br><br>Defendant. | CRIMINAL CASE NO. 08-00002<br><br>OPPOSITION TO PROPOSED JURY INSTRUCTIONS AND MOTION TO DISMISS INDICTMENT |

**COMES NOW**, Colin M. Thompson, attorney for Mohamad Ruhul Amin in the above entitled matter (hereinafter "Defendant'), hereby oppose the Governments' proposed jury instructions and further motion to dismiss the indictment. Nothing in this opposition is intended to waive any right of the Defendant to object to the introduction of evidence or to the Government's proposed jury instructions at trial and all such rights are reserved.

I.   **THE COURT SHOULD REJECT THE GOVERNMENT'S PROPOSED JURY INSTRUCTIONS AND DISMISS THE INDICTMENT AS IT FAILS TO ALLEGE A CRIME UNDER 18 U.S.C. § 1542**

The Government prefaces its motion with the idea that this case presents unique legal issues because of the relationship between the Commonwealth of the Northern Mariana Islands and the United States. What the Government describes as "unique" is the fact that it cannot prosecute the

1

defendant for marriage fraud pursuant to 8 U.S.C. § 1325(c). Because it cannot prosecute Defendant under the federal marriage fraud statute, the Government instead is trying to obtain a conviction through an end around by charging Defendant under 18 U.S.C. § 1542 and submitting an uncharged crime to the jury by way of its "proposed jury instructions."

The Government's indictment and proposed jury instructions exhibit bigger problems than trying to backdoor a charge of marriage fraud into a criminal statute where it does not exist. The Defendant submitted proposed jury instructions including the definition of a legal marriage in the Commonwealth. If any such instruction is necessary for the jury, then the proper instruction is that describing a valid marriage in the Commonwealth. It is a well-established rule that a state has the power to determine how its residents enter into a marital relationship. *Maynard v. Hill*, 125 U.S. 190, 205, 31 L.Ed. 654, 8 S.Ct. 723 (1887).[1] Variations in state law concerning the prerequisites to a valid marriage may work to the advantage of a resident. See, *e.g. Albina Engine & Machine Works v. J. J. O'Leary*, 328 F.2d 877 (9th Cir. 1964)(claimant was "widow" of decedent because the two had entered into a nonceremonial marriage recognized by local law. The claimant was, therefore, entitled to receive death benefits under the Longshoreman's and Harbor Workers' Act); *Day v. Secretary of Health & Human Services*, 519 F.Supp. 872 (D.S.C. 1981)(claimant found to have properly received Social Security benefits where a valid common law marriage existed between claimant and her retired "husband"); *Old Republic Insurance Company v. Christian*, 389 F. Supp. 335 (E.D.Tenn. 1975) (woman was entitled to share in Tennessee workmen's compensation benefits arising out of work-

---

[1] The Court described the state's role in defining a valid marriage: Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution. *Maynard*, 125 U.S. at 205.

related death of her common law husband where common law marriage was entered into in either Georgia or Alabama).

In *Commonwealth v. Norita*, Crim.No. 01-0304 (N.Mar.I. Super. Ct. June 5, 2002), Judge Manibusan described the law of the Commonwealth relating to a valid marriage:

> "... in the case at hand, the record establishes that Defendants fulfilled the requirements for a valid marriage contract, received a valid marriage license, and participated in a valid marriage ceremony before the Mayor of Saipan[2]. There is no evidence, therefore, that Defendants failed to properly marry according to the laws, rules and regulations of the CNMI[3]. Defendants' marriage license, as submitted in support for the Application, therefore, is valid and legal pursuant to the laws of the CNMI. Further, Defendants have not made false statements concerning their marriage as they have been legally wed. Because Defendants have not acted to violate 3 CMC § 4363(b) and (d), the court finds that Defendants did not conspire to commit immigration fraud as proscribed by § 4363(b) and (d). The court, therefore, grants Defendants' Motions to Dismiss Information."

Accord *Commonwealth v. Shameem*, Crim. No. 02-0027 (N.Mar.I. Super. Ct. June 24, 2002)(J. Manibusan). The decisions of Judge Manibusan are attached to this opposition for the convenience of the court. (Exhibits "A" and "B"). Like Judge Manibusan, the Court should dismiss this indictment or at least disallow the Government's proposed jury instruction.

---

[2] A marriage contract between a non-citizen and a citizen of the CNMI is valid when the male is at least 18 years of age at the time of the contract and the female is at least sixteen years of age. See CMC § 1201(a). Further, neither party may have a lawful living spouse, and a marriage ceremony must be conducted by an authorized person. See 8 CMC § 1201(b) and (c). To obtain a marriage license, the couple is required to file an application with the Governor or a mayor setting forth each party's full name, age, citizenship, residence, occupation and whether previously married, as well as the manner of dissolution of any previous marriages. See 8 CMC § 1202(b). After obtaining a marriage license, the marriage ceremony between a non-citizen and a citizen must be performed in the CNMI by an authorized person and before two witnesses. See 8 CMC § 1203.

[3] The laws of the CNMI do not contemplate the elements of what constitutes a valid marriage beyond the civil legalities articulated in 8 CMC §§ 1201, 1202 and 1203.

## II. THE GOVERNMENT'S PROPOSED INSTRUCTION DESCRIBING A FALSE STATEMENT AS ONE THAT IS "TECHNICALLY" TRUE IS UNWORKABLE AND CANNOT UPHOLD A CONVICTION.

The Government's proposed instruction describing a false statement as one that is "technically" true is unworkable and cannot uphold a conviction. Cases interpreting 18 U.S.C. § 1001, a criminal statute similar to 18 U.S.C. § 1542 in that it makes it unlawful to express a "false statement," have held that persons cannot be convicted a making a false statement where a statement is true on its face. For example, in *United States v. Moses*, 94 F.3d 182, 188-189 (5th Cir. 1996), the Court overturned a conviction under 18 U.S.C. § 1001 stating that because the statement of the defendant was not false on its face, the evidence was insufficient to support the conviction. In that case:

> Moses was charged with making a false representation on August 17, 1992 in his INS Form N-445 application. Although the indictment alleged that Moses misrepresented that he had not separated from his wife when in fact he had separated from her in 1987, the question forming the basis of the indictment asked only if Moses had separated from his wife after the date that he filed his petition for naturalization: "After the date you filed your petition: 1. Have you married, or been widowed, separated, or divorced?" Moses responded "no."
>
> Moses argues that this was not a false statement because at the time he filed his original petition on May 20, 1992 he was married to Janice Moses, but living apart from her. From the filing of this petition to the date Moses filed the Form N-445, there was no change in his marital status -- he was separated from his wife before he filed the original petition, and he remained separated from her between the filing of the petition and the filing of his N-445 form.

*Moses*, 94 F.3d at 188 (5th Cir. 1996)(citations omitted). The Court of Appeals agreed and held that defendant "did not make a false statement when he responded that he had not separated from his wife after the filing of the original petition." *Id*. In reaching its holding, the Court explained that:

> We do not condone, but rather condemn, Moses's lack of candor with the INS on the various documents he filed in an effort to obtain naturalization. We cannot uphold a conviction, however, where the alleged statement forming the basis of a violation of section 1001 is true on its face. Other circuits have reached a similar conclusion:

4

> [A] prosecution for a false statement under § 1001 or under the perjury statutes cannot be based on an ambiguous question where the response may be literally and factually correct. . . . An indictment premised on a statement which on its face is not false cannot survive. *United States v. Vesaas*, 586 F.2d 101, 104 (8th Cir. 1978); *United States v. Gahagan*, 881 F.2d 1380, 1383 (6th Cir. 1989).

Because Moses's response was not false on its face, the evidence was insufficient to support the conviction [under 18 U.S.C. § 1001].

Like in *Moses*, the statement on the passport application was not false on its face. As such, the statement cannot sustain a conviction under 18 U.S.C. § 1542. Consequently, the Court should not only reject the Government's proposed jury instruction, the Court should dismiss the indictment.

### III.    CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that the Court reject the Government's proposed jury instructions and that the Court further dismiss the indictment.

Dated this <u>6th</u> day of March 2008

/s/<br>
**COLIN M. THOMPSON, ESQ.**<br>
Attorney for Defendant

IN THE SUPERIOR COURT

FOR THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH I. NORITA, DINA CENTINO NORITA and NATIVIDAD CABRERA CERRADO <br><br> Defendants. | CRIMINAL CASE NO. 01-0304 <br><br> DECISION AND ORDER GRANTING MOTIONS TO DISMISS INFORMATION |

## I. INTRODUCTION

The above matter came on for a hearing on May 2, 2002, at 9:00 a.m. on Defendant Joseph I. Norita's ("Mr. Norita") and Defendant Dina Centino Norita's ("Mrs. Norita") (collectively "Defendants") Motions to Dismiss Information. Assistant Attorney General James J. Benedetto appeared on behalf of the Government. Chief Public Defender Masood Karimipour appeared on behalf of Mr. Norita. Matthew T. Gregory, Esq. appeared on behalf of Mrs. Norita. The court, having reviewed the briefs, exhibits, affidavits, and having heard and considered the arguments of counsel, now renders its written decision.

## II. FACTS

On July 2, 2001, the Government filed an Information against Defendants charging each with two counts of immigration fraud, in violation of 3 CMC § 4363(b) and (d), and one count of

EXHIBIT "A"

conspiracy, in violation of 6 CMC § 303. On March 22, 2002, Defendants each filed a Motion to Dismiss Information. The Government opposes the motions.

### III. ISSUES

Whether Defendants violated 3 CMC § 4363(b) and (d) when they submitted a lawful marriage license in support of an Application for Entry Permit to obtain immediate relative status for Mrs. Norita.

### IV. ANALYSIS

The Government asserts that on September 18, 2000, Defendants submitted a fraudulent Application for Entry Permit ("Application"), and subscribed to false statements within that Application to obtain immediate relative status for Mrs. Norita. Specifically, the Government contends that Defendants entered into a fraudulent, or "sham," marriage[1] for the sole intent of obtaining immediate relative status, and that Defendants based the Application on their marriage license, which is a fraudulent document because Defendants did not intend "to live as husband and wife or enter into a true marriage . . . ." See Information (July 2, 2001). Defendants, therefore, knowingly submitted a false document and made false statements to obtain immediate relative status, in violation of 3 CMC § 4363(b) and (d). Defendants, however, assert that they did not submit false documents or make false statements in support of the Application as their marriage is legally valid, and that § 4363(b) and (d) do not proscribe "sham" marriages as complained of by the Government.

Pursuant to § 4363:

> (b) Every person who shall manufacture, traffic in, import, export, sell, receive, possess without authorization or use any false, forged, counterfeit, altered or tampered-with document, passport, identification card, visa, visa or entry stamp, license, permit, entry permit, birth or health certificate or other document used or required to secure or support an application for any Commonwealth immigration or labor benefit, and who knows or clearly should have known that the document was false, forged, counterfeit, altered, or tampered-with, shall be guilty of document fraud, and, upon conviction thereof, be imprisoned for not more than five years, or

---

[1] Defendants married on September 15, 2000. It is alleged that Mr. Norita's sister, Defendant Natividad Cabrera Cerrado ("Cerrado"), paid Mr. Norita to marry Mrs. Norita, Cerrado's lesbian lover, to obtain immediate relative status for Mrs. Norita.

-2-

1  fined not more than $2,000, or both.

2  . . . .

3  (d) Whoever, upon entry or when applying for an entry permit to enter the Commonwealth, deliberately impersonates another, falsely
4  states, uses or gives the name of a deceased individual or falsely states, uses or gives an untrue date of birth, or falsely states, uses or
5  gives an assumed or fictitious name without disclosing his or her true identity, or knowingly subscribes as true any untrue statement
6  in any application, affidavit or other document required by the immigration laws or regulations, or knowingly presents any such
7  application, affidavit, or other document containing any such false statement upon entry or otherwise, is guilty of immigration fraud,
   and, upon conviction thereof, shall be imprisoned for not more than
8  five years, and may be fined not more than $2,000, or both.

9  In construing any given statutory scheme, courts generally begin with the language of the statute

10 itself. *See U.S. Lines, Inc. v. Baldridge*, 677 F.2d 940, 944 (D.C. Cir. 1982). Absent any

11 ambiguity, the language of the statute itself should ordinarily be regarded as conclusive. *See*

12 *United States v. Mehrmanesh*, 689 F.2d 822, 828 (9th Cir. 1982). A statute is considered

13 ambiguous when it is capable of more than one meaning and is confusing to a well-informed

14 person. *See Wis. Dept. of Revenue v. Nage-Hart Inc.*, 234 N.W.2d 350, 352 (Wis. 1975). Thus,

15 unless the statute provides otherwise, the courts should adhere to the rule that words be given their

16 plain meaning. *See Commonwealth Ports Auth. v. Hakubotan Saipan, Ent., Inc.*, 2 N.M.I. 212, 221

17 (1991); *Office of the Attorney Gen. v. Deala*, 3 N.M.I. 110, 117 (1992) (stating that if the meaning

18 of a statute is clear, it will not be construed contrary to its plain meaning).

19      Here, the language of § 4363(b) and (d) are clear and unambiguous as to the proscribed

20 conduct. Section 4363(b) states that the knowing use of falsified, forged, or tampered-with

21 documents to obtain any immigration or labor benefits is prohibited and constitutes "document

22 fraud." Section § 4363(d), on the other hand, states that knowingly giving false statements in any

23 application or document required by the immigration laws of the CNMI is prohibited and

24 constitutes "immigration fraud." Neither section encompasses "sham" marriages as either

25 document or immigration fraud, nor does either section prohibit the act of marrying for the sole

26 intent of obtaining immigration or labor benefits. Though legislative history should not be used

27 as a guide to the meaning of a statute that is plain and unambiguous on its face, the court notes that

28 the Legislature, in proposing these Sections stated that illegal aliens presented a "serious problem"

1 in the CNMI, and that those illegal aliens "entered the CNMI with forged passports or entry permits
2 ...." *See* Def.'s Mot. to Dismiss Info. at Ex. B. Thus, § 4363(b) and (d) do not, by their plain
3 language, prohibit the entering into of a fraudulent marriage to obtain immigration and labor
4 benefits. Rather, they prohibit the use of false documents and statements.

5       The Government contends, however, that Defendants' marriage license is a fraudulent
6 document and that the use of the marriage license constitutes a false statement due to the fraudulent
7 intent of the marriage. The court finds this contention to be without merit. The Government fails
8 to proffer any evidence showing that Defendants did not lawfully marry and thus, forged or
9 falsified their marriage license, or made false statements concerning their marriage to one another.
10 Rather, in the case at hand, the record establishes that Defendants fulfilled the requirements for a
11 valid marriage contract, received a valid marriage license, and participated in a valid marriage
12 ceremony before the Mayor of Saipan.[2] There is no evidence, therefore, that Defendants failed to
13 properly marry according to the laws, rules and regulations of the CNMI.[3] Defendants' marriage
14 license, as submitted in support for the Application, therefore, is valid and legal pursuant to the
15 laws of the CNMI. Further, Defendants have not made false statements concerning their marriage
16 as they have been legally wed. Because Defendants have not acted to violate 3 CMC § 4363 (b)
17 and (d), the court finds that Defendants did not conspire to commit immigration fraud as proscribed
18 by § 4363(b) and (d). The court, therefore, grants Defendants' Motions to Dismiss Information.
19 ////
20 ////
21 ////
22

---

23    [2] A marriage contract between a non-citizen and a citizen of the CNMI is valid when the male is at least eighteen
24 years of age at the time of the contract and the female is at least sixteen years of age. *See* 8 CMC § 1201(a). Further, neither party may have a lawful living spouse, and a marriage ceremony must be conducted by an authorized person.
25 *See* 8 CMC § 1201(b) and (c). To obtain a marriage license, the couple is required to file an application with the Governor or a mayor setting forth each party's full name, age, citizenship, residence, occupation and whether previously
26 married, as well as the manner of dissolution of any previous marriages. *See* 8 CMC § 1202(b). After obtaining a marriage license, the marriage ceremony between a non-citizen and a citizen must be performed in the CNMI by an
27 authorized person and before two witnesses. *See* 8 CMC § 1203.

28    [3] The laws of the CNMI do not contemplate the elements of what constitutes a valid marriage beyond the civil legalities articulated in 8 CMC §§ 1201, 1202 and 1203.

- 4 -

to be without merit. ... Motion to Dismiss Information. The court finds the Government's position to be without merit.

## V. CONCLUSION

Based on the foregoing reasons, Defendant Joseph I. Norita's Motion to Dismiss Information and Defendant Dina Centino Norita's Motion to Dismiss Information are GRANTED. Counts III, IV, and V against Mr. Norita are dismissed. Counts I, II, and V against Mrs. Norita are dismissed. The Government's Motion to Strike is DENIED.*

SO ORDERED this __5__ day of June, 2002.

EDWARD MANIBUSAN, Presiding Judge

---

*The Government filed a Motion to Strike asserting that Defendants' did not timely file their Reply Memorandum in Support of Defendants' Motion to Dismiss Information. The court finds the Government's position to be without merit.

-5-

CLERK OF COURT
SUPERIOR COURT
FILED

2002 JUN 24 AM 11: 26

BY:_____
DEPUTY CLERK OF COURT

IN THE SUPERIOR COURT

FOR THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, <br><br> Plaintiff, <br><br> v. <br><br> MUSTAFA ABDULLA SHAMEEM, <br><br> Defendant. | CRIMINAL CASE NO. 02-0027 <br><br> DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTS 5, 6 AND 7 OF INFORMATION |

## I. INTRODUCTION

The above matter came on for a hearing on May 2, 2002, at 9:00 a.m. on Defendant Mustafa Abdulla Shameem's ("Defendant") Motion to Dismiss Counts 5, 6 and 7 of Information. Assistant Attorney General Kevin A. Lynch appeared on behalf of the Government. Joseph E. Horey, Esq. appeared on behalf of Defendant. The court, having reviewed the briefs, exhibits, affidavits, and having heard and considered the arguments of counsel, now renders its written decision.

## II. FACTS

On July 2, 2001, the Government filed an Information against Defendant charging him with conspiracy to commit immigration fraud, in violation of 6 CMC § 303; solicitation with the intent to commit immigration fraud, in violation of 6 CMC § 302; and obstructing justice by tampering with a witness, in violation of 6 CMC § 3302. On April 8, 2002, Defendant filed this motion to dismiss the charges. The Government opposes the motion.


AG
PD
DENISE

RECEIVED
DATE: 4/25/02

ENTERED
DATE:_____

EXHIBIT "8"

### III. ISSUES

1. Whether Defendant conspired and solicited to commit immigration fraud under 3 CMC § 4363(b) and (d).

2. Whether to dismiss the charge of obstructing justice by tampering with a witness.

### IV. ANALYSIS

In the Information, the Government states that on October 16, 2000, Rosa Gertrude Guruen ("Ms. Guruen"), Defendant's wife, submitted a fraudulent Application for Entry Permit ("Application"), and subscribed to false statements within that Application to obtain immediate relative status for Defendant. The Government contends that Defendant, with the intent to effect a change in his immigration status, conspired with and solicited Ms. Guruen to enter into a fraudulent, or "sham," marriage, and to submit an Application using the couple's marriage license, which the Government contends is a fraudulent document because Defendants did not intend "to live as husband and wife or enter into a true marriage . . . ." *See* Information (Jan. 1, 2002). Thus, Defendant, conspired and solicited to commit immigration fraud pursuant to 3 CMC § 4363(b) and (d). Further, the Government asserts that Defendant obstructed justice by asking his wife to make certain false statements to Department of Labor and Immigration ("DOLI") investigators.

Defendant, however, asserts that the Government cannot charge him with conspiring and soliciting to commit immigration fraud because he did not submit false documents or make false statements in support of his Application concerning his marriage. Further, § 4363(b) and (d) do not proscribe "sham" marriages as complained of by the Government. Pursuant to § 4363:

> (b) Every person who shall manufacture, traffic in, import, export, sell, receive, possess without authorization or use any false, forged, counterfeit, altered or tampered-with document, passport, identification card, visa, visa or entry stamp, license, permit, entry permit, birth or health certificate or other document used or required to secure or support an application for any Commonwealth immigration or labor benefit, and who knows or clearly should have known that the document was false, forged, counterfeit, altered, or tampered-with, shall be guilty of document fraud, and, upon conviction thereof, be imprisoned for not more than five years, or fined not more than $2,000, or both.
> 
> . . . .
> 
> (d) Whoever, upon entry or when applying for an entry permit to enter the Commonwealth, deliberately impersonates another, falsely

-2-

> states, uses or gives the name of a deceased individual or falsely states, uses or gives an untrue date of birth, or falsely states, uses or gives an assumed or fictitious name without disclosing his or her true identity, or knowingly subscribes as true any untrue statement in any application, affidavit or other document required by the immigration laws or regulations, or knowingly presents any such application, affidavit, or other document containing any such false statement upon entry or otherwise, is guilty of immigration fraud, and, upon conviction thereof, shall be imprisoned for not more than five years, and may be fined not more than $2,000, or both.

In construing any given statutory scheme, courts generally begin with the language of the statute itself. *See U.S. Lines, Inc. v. Baldridge*, 677 F.2d 940, 944 (D.C. Cir. 1982). Absent any ambiguity, the language of the statute itself should ordinarily be regarded as conclusive. *See United States v. Mehrmanesh*, 689 F.2d 822, 828 (9th Cir. 1982). A statute is considered ambiguous when it is capable of more than one meaning and is confusing to a well-informed person. *See Wis. Dept. of Revenue v. Nage-Hart Inc.*, 234 N.W.2d 350, 352 (Wis. 1975). Thus, unless the statute provides otherwise, the courts should adhere to the rule that words be given their plain meaning. *See Commonwealth Ports Auth. v. Hakubotan Saipan, Ent., Inc.*, 2 N.M.I. 212, 221 (1991); *Office of the Attorney Gen. v. Deala*, 3 N.M.I. 110, 117 (1992) (stating that if the meaning of a statute is clear, it will not be construed contrary to its plain meaning).

Here, the language of § 4363(b) and (d) are clear and unambiguous as to the proscribed conduct. Section 4363(b) states that the knowing use of falsified, forged, or tampered-with documents to obtain any immigration or labor benefits is prohibited and constitutes "document fraud." Section § 4363(d), on the other hand, states that knowingly giving false statements in any application or document required by the immigration laws of the CNMI is prohibited and constitutes "immigration fraud." Neither section encompasses "sham" marriages as either document or immigration fraud, nor does either section prohibit the act of marrying for the sole intent of obtaining immigration or labor benefits. Though legislative history should not be used as a guide to the meaning of a statute that is plain and unambiguous on its face, the court notes that the Legislature, in proposing these Sections stated that illegal aliens presented a "serious problem" in the CNMI, and that those illegal aliens "entered the CNMI with forged passports or entry permits . . . ." *See* Def.'s Mot. to Dismiss Info. at Ex. B. Thus, § 4363(b) and (d) do not, by their plain language, prohibit the entering into of a fraudulent marriage to obtain immigration and labor

1 benefits. Rather, they prohibit the use of false documents and statements.

2 The Government contends, however, that Defendant's marriage license is a fraudulent
3 document and that the use of the marriage license constitutes a false statement due to the fraudulent
4 intent of the marriage. The court finds this contention to be without merit. The Government fails
5 to proffer any evidence showing that Defendant did not properly marry Ms. Guruen according to
6 the laws, rules and regulations of the CNMI and thus, forged or falsified the couple's marriage
7 license, or made false statements concerning his marriage to Ms. Guruen. There is no evidence that
8 Defendant did not fulfill the requirements for obtaining a valid marriage contract, marriage license,
9 and marriage ceremony.[1] The marriage license submitted in support of the Application, therefore,
10 is valid and legal pursuant to the laws of the CNMI. Because Defendant cannot be held to have
11 violated 3 CMC § 4363 (b) and (d), the court finds that Defendant did not conspire and solicit to
12 commit immigration fraud. The court, therefore, grants Defendant's motion to dismiss Counts 5
13 and 6 of the Information.

14 The Government also asserts in the Information that Defendant obstructed justice by
15 tampering with a witness. Specifically, the Government charges Defendant with contacting Ms.
16 Guruen, and asking her to make false statements to DOLI investigators. Defendant contends that
17 because Ms. Guruen had not been called to testify before a court at the time of the alleged
18 tampering, she is not a witness under 6 CMC § 3302.

19 Pursuant to 6 CMC § 3302, "[e]very person who . . . unlawfully tampers with witnesses
20 or prevents or attempts to prevent their attendance at trials, is guilty of obstructing justice . . . ."
21 A witness, is "one who, being present, personally sees or perceives a thing. A witness is also a
22 person called to testify before a court." *Commonwealth v. Kaipat*, 2 N.M.I. 322, 331 (1991)
23 (citations omitted). Thus, a witness is not just one who is called to testify, but also one who

---

[1] A marriage contract between a non-citizen and a citizen of the CNMI is valid when the male is at least eighteen years of age at the time of the contract and the female is at least sixteen years of age. *See* 8 CMC § 1201(a). Further, neither party may have a lawful living spouse, and a marriage ceremony must be conducted by an authorized person. *See* 8 CMC § 1201(b) and (c). To obtain a marriage license, the couple is required to file an application with the Governor or a mayor setting forth each party's full name, age, citizenship, residence, occupation and whether previously married, as well as the manner of dissolution of any previous marriages. *See* 8 CMC § 1202(b). After obtaining a marriage license, the marriage ceremony between a non-citizen and a citizen must be performed in the CNMI by an authorized person and before two witnesses. *See* 8 CMC § 1203.

1  personally saw some action or thing. In investigating Defendant for immigration fraud, Ms.
2  Guruen would, therefore, be a witness. Thus, Defendant's motion to dismiss Count 7 of the
3  Information is denied.

### V. CONCLUSION

Based on the foregoing reasons, the court grants in part and denies in part Defendant's Motion to Dismiss Counts 5, 6 and 7 of Information. Counts 5 and 6 against Defendant are dismissed. Count 7 against Defendant remains.

SO ORDERED this 24 day of June, 2002.

*[signature]*
EDWARD MANIBUSAN, Presiding Judge